## WEATHERBEE et v STATE

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 4, 1932

Fred Heim, Youngstown, and H. H. Hull, Youngstown, for plaintiff in error.

R. L. Thomas, Prosecuting Attorney, Youngstown, for defendant in error.

POLLOCK, J.

It appears that the owner of this car had not given these parties permission to operate his car, and there is evidence they were operating this car, so they were required to explain their right to operate the car. Mr. Keith Weatherbee is called by the defendant. He testifies that on the evening this car was parked back of the theater, the 16th of February, some time in the evening, a party by the name of Dan Farrell, a party who has disappeared, except the name, call-

ed him on the telephone and asked him if he wanted to buy a car, if he wanted a car or to sell a car, and after some talk he agrees to meet Dan Farrell down in front of the post office. Farrell told him, as he says, that the car would be parked about eight o'clock at this parking place back of the State Theater, and that he would meet him in front of the post office. He testifies he did meet him down there and Farrell said the party owning the car wanted to sell it. He says he operated the car some and after he did so he agreed to purchase it for $500, giving Farrell $50.00 and agreeing to pay the other $450 when he sold the car. On cross examination he is asked by the State's attorney in regard to questions and answers which he made while being examined by the prosecuting attorney, as we have stated, and the substance of this examination which he does not deny making, and explaining that he was confused on that evening, was that this man, Dan Farrell, telephoned him, as he said, told him to meet him there with this car, and that as he understood, and he afterwards says he understood it from Dan Farrell, that this was the car that the owner wanted him to take and sell or keep secluded for sixty days until the owner would collect the insurance.

These are the two stories which the jury had from the lips of this man as to how he came into possession of the car. There is a further witness called in rebuttal by the State, by the name of Joe Kopso, who in fact appears to be doing what he did do with the consent of the police officers, in order, no doubt, to find out what these people were doing. It appears from his evidence that he had been going up to Fanto's place and changing the numbers on the motors of certain cars. He testified he was told to be there at Fanto's place one evening; that he went and both of the accused were there, and possibly this man Wagner. They talked about changing the number on this car and touching it up some, making some other changes, but they were not ready to do that yet because they had not yet sold the car. They did in his presence, or he did for them, take off the license plates. Now, it was Weatherbee that was driving, got this car as we have stated, and it was he that was operating it. From this evidence he was convicted and we think the jury had a right to believe either of his stories, the one that this man telephoned him and he met him in front of the post office and bought this car, or the jury had a right to believe the other story, which he admits he told at the time he was being

questioned by the prosecutor, and no doubt it was the true story. Whether he believed that Farrell was telling the truth as to how he got the car, he knew he was engaged in an illegal transaction of some kind.

It now appears from this evidence, at least, that Farrell, if there was such a man at all, had no authority to take this car, and if this man did take it, and give it to Weatherbee, at the post office, Weatherbee knew that Farrell had no right to take the car, so we think the jury were fully warranted in finding him guilty.

Now, it is strongly urged that Fanto had nothing to do with the operating of this car. It appears from these two witnesses that Fanto told Weatherbee that Wagner wanted to buy a car, and that he went to Fanto's house and got Fanto in the car and they drove around the street to where Wagner lived. Fanto went to show Weatherbee how to get to Wagner. That is all he had to do, as is claimed. If that was true, he was not operating this car without the owner's consent, and it is urged that he did not operate it. He simply rode around in it. But it does not make any difference. If he was in this scheme and knew how Weatherbee had gotten this car he was just as guilty as if he was engaged in operating it.

We have the evidence of the witness Joseph Kopso, who went to Fanto's house to change these numbers, and from his testimony he had done that for these parties a number of times. We also have the evidence of these other cars, that some of them Fanto admitted he knew something about. So we think there is not any question from all this evidence but what these two parties, and probably others not now before the court, were engaged in this business, getting possession of cars in some way and disposing of them, so that we think the evidence was sufficient to authorize the jury to find these parties guilty.

There is another error complained of. At the close of the evidence the defense filed what they called a request to charge. It is rather a request to strike out certain evidence. The court refused it. The request was that the court withdraw from the jury all of the evidence in regard to these other crimes of stealing and wrongfully getting possession of other automobiles. It is urged in the first place that this was not a case warranting such evidence in order to prove guilty knowledge, and further that these others were not taken, that these others were stolen or gotten in possession in some way not as this one, but there were no charges in the other that they were driving without the consent of the owner,

and that is the proposition urged strongly. The other cars, the charge against them were stealing or selling the car. The state claims this under §13444-19 GC:

"In any criminal case where the defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant."

It is a very broad provision of the recent Code, and we think that the court was clearly within its right in permitting this evidence. These parties were only charged with taking and operating this car wrongfully, but from this evidence if they had had a little more time they would have sold the car, just as they did the other cars; in other words, they took this car for the very same purpose that they had taken the other cars, to sell it and get the price of it, and we think there was practically the same crime in substance, the same act as these others, and the court was within its right in admitting this evidence. The judgment of the court below is affirmed. Exceptions.

ROBERTS and FARR, JJ, concur.